UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

                              Chapter 13

WINSOME DAVIDSON,                      Case No. 8-25-73951-ast

                         Debtor.
----------------------------------------------------------------X

**AFFIRMATION IN SUPPORT OF MOTION TO OBTAIN RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(d)(1) AND (d)(2), RELIEF FROM THE CO-DEBTOR STAY PURSUANT TO 11 U.S.C. § 1301(c)(3), AND *IN REM* RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4)(B) AND 11 U.S.C § 105(a),**

**TO THE HONORABLE ALAN S. TRUST:**

      I, Mark R Knuckles, Esq., am an attorney duly admitted to practice law in the Courts of this State and in the United States Bankruptcy Court for the Eastern District of New York, and I hereby state as follows:

      1.    I submit the within Affirmation under penalty of perjury in support of the motion of the secured creditor, Rushmore Servicing as servicer for U.S. Bank National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT (the "Movant"), for an order granting to the Movant relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), relief from the co-debtor stay pursuant to 11 U.S.C. § 1301(c)(3); *in rem relief* pursuant to 11 U.S.C. § 362(d)(4)(B) and 11 U.S.C. § 105(a), pursuant to 11 U.S.C. § 1301(c)(3), granting the Movant relief from the co-debtor stay as it applies to Milton Davidson; and such other and further relief as this honorable Court may deem just, proper, and equitable with respect to the real property commonly known as 46 Peters Avenue, Hempstead, NY 11550 (the "Premises").

**STATEMENT OF FACTS**

      2.    On or about August 22, 2003, Winsome Davidson (the "Debtor") and Milton Davidson (the "Co-Debtor") executed a Note evidencing indebtedness to American Home Mortgage in the amount of $264,335.00. As collateral security for the payment of said sum, the Debtor and Co-Mortgagor duly

executed, acknowledged, and delivered a Mortgage in said amount wherein Mortgage Electronic Registration Systems, Inc. solely as nominee for American Home Mortgage, its successors and assigns, was granted a mortgage lien against the Premises. Said Mortgage was recorded in the Nassau County Clerk's Office on September 9, 2003 in Liber M 24896, at Page 263, and the recording fee was paid thereon. The loan was ultimately assigned to the Movant by written assignment dated May 17, 2018 and recorded in the Nassau County Clerk's Office on May 25, 2018 in Liber M00023478 at Page 234. Copies of the Note, Mortgage, and Chain of Assignments are annexed hereto as **Exhibit A.**

3. The Debtor defaulted on the payment due February 1, 2017 pursuant to the Note and Mortgage, resulting in the commencement of a foreclosure action against the Debtor and Co-Debtor in Nassau County Supreme Court bearing Index No.: 611100/2018 (the "Foreclosure Action"), resulting in the entry of a Judgment of Foreclosure and Sale on March 2, 2023, annexed hereto as **Exhibit B**.

4. The Movant scheduled a foreclosure sale for May 18, 2023. The Movant was prevented from proceeding with the sale due to the Co-Mortgagor filing a Chapter 13 Bankruptcy Petition three (3) days before the sale on May 15, 2023 bearing Docket Number 8-23-71717 (the "First Filing"). Said filing was deficiently filed without all required documents and thus dismissed on August 22, 2023. A copy of the Notice of Sale and Docket showing the dismissal are annexed hereto as **Exhibit C.**

6. The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for November 8, 2023. Annexed hereto as **Exhibit D** is a copy of the Notice of Sale. The foreclosure sale scheduled for November 8, 2023 was cancelled due to request for a modification Agreement by the Debtor.

7. The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for January 10, 2024. The Movant was again prevented from proceeding with the sale due to the Co-Debtor filing a second Chapter 13 Bankruptcy Petition five (5) days before the sale on January 5, 2024 bearing Docket Number 24-70063 (the "Second Filing"). Said filing was again deficiently filed without all required documents and thus dismissed on January 17, 2024. A copy of the Notice of Sale and Docket showing the dismissal is annexed hereto as **Exhibit E.**

8.      The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for April 10, 2024. The Movant was again prevented from proceeding with the sale due to the Debtor filing a Chapter 13 Bankruptcy Petition one (1) day before the sale on April 9, 2024 bearing Docket Number 8-24-71390 (the "Third Filing"). Said filing was again deficiently filed without all required documents and thus dismissed on April 17, 2024. A copy of the notice of sale and Docket showing the dismissal is annexed hereto as **Exhibit F.**

9.      The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for September 4, 2024. The Movant was again prevented from proceeding with the sale due to the Debtor filing a Chapter 13 Bankruptcy Petition one (1) day before the sale on September 3, 2024 bearing Docket Number 8-24-73408 (the "Fourth Filing"). Said filing was again deficiently filed without all required documents and thus dismissed on February 5, 2025. A copy of the Notice of Sale and Docket showing the dismissal is annexed hereto as **Exhibit G.**

10.     The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for May 7, 2025.  The Movant was again prevented from proceeding with the sale due to the Co-Debtor filing a third Chapter 13 Bankruptcy Petition two (2) days before the sale on May 5, 2025, bearing Docket Number 8-25-71774 (the "Fifth Filing"). Said filing was again deficiently filed without all required documents and thus dismissed on July 28, 2025. A copy of the Notice of Sale and Docket showing the dismissal is annexed hereto as **Exhibit H**.

11.     The Movant again took steps and incurred costs to schedule a foreclosure sale of the Premises set for October 15, 2025. The Movant was again prevented from proceeding with the sale due to the Debtor filing the instant sixth Chapter 13 Bankruptcy Petition two (2) days before the sale on October 13, 2025 bearing Docket Number 8-25-73951 (the "Sixth Filing"). Said filing is again deficiently filed without all required documents. See this Court's Docket and Notice of Sale as **Exhibit I.**

12.     The Debtor has remained in default with regard to mortgage payments since February 1, 2017. The fair market value of the Premises has been determined to be $625,000.00 pursuant to a Broker

Price Opinion dated March 3, 2025, an amount slightly higher than the Movant's payoff of $591,609.52 from August 16, 2025, pursuant to the Relief from Stay – Real Estate and Cooperative Apartments Certification filed in support of the instant motion and submitted herewith. A copy of the valuation and Certification are annexed hereto as **Exhibit J.**

## ARGUMENT

## POINT I

### THE MOVANT SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY FOR CAUSE PURSUANT TO 11 U.S.C. § 362(d)(1) DUE TO THE BAD FAITH EXHIBITED BY THE DEBTOR

13.     Section 362(d)(1) of the Bankruptcy Code permits the Court to terminate, annul, modify or condition the automatic stay for cause, such as bad faith demonstrated by the debtor which may be sufficient "cause" to lift the automatic stay. In re Project Orange Associates, LLC, 432 B.R. 89, 112 (Bankr. S.D.N.Y. 2010). Both in the context of dismissal and relief from the stay, "the standards for bad faith as evidence of cause … are not substantively different from each other." In re 234-6 West 22nd St. Corp., 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Analyzing whether bad faith exists, it must be determined "whether the Debtor and its principal have played by the rules; have met their obligations under the Bankruptcy Code; and have 'done equity' when invoking the equitable protections the Bankruptcy Code provides." In re Eclair Bakery Ltd., 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000).

14.     The following factors are widely recognized as indicia a bad faith filing:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.
> In re C-TC 9th Avenue Partnership, 113 F.3d 1034, 1311 (2d Cir. 1997).

15.     In reviewing the Debtor's instant case, the Debtor has once again not filed all required schedules or a Chapter 13 Plan. The timing of the Debtor's and the Co-Debtor's filings are particularly indicative of an intent to delay and/or frustrate the Movant's legitimate efforts to consummate the public auction sale of the Premises. Since 2023, the Debtor and Co-Debtor have filed six (6) Chapter 13 Bankruptcy Petitions, all before scheduled sales.  Every filing were all deficiently filed without all required documents and thus dismissed.   All these bankruptcy filings were filed with one intent – to stop the Movant from conducting it's auction on the Premises.  Based on the foregoing analysis, it is clear that factors cited by the United States Court of Appeals for the Second Circuit are present here and that the instant case is a bad faith filing. In re C-TC 9th Avenue Partnership, 113 F.3d 1034 (2d Cir. 1997).

16.     Accordingly, the Movant respectfully contends that the automatic stay should be terminated herein for cause pursuant to 11 U.S.C. § 362(d)(1). Id.

**POINT II**

**THE MOVANT SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AS THE MOVANT'S INTEREST IN THE PREMISES IS NOT ADEQUATELY PROTECTED**

17.     Under 11 U.S.C. §362(d)(1), the automatic stay may be vacated in a Chapter 13 proceeding as to a secured creditor which does not receive adequate protection of its security interest. Section 362(d)(1) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest … 11 U.S.C. §362(d)(1).

18.     Bankruptcy courts have consistently held that the failure of a debtor to make regular post-petition payments, or even *de minimis* payments pursuant to a mortgage constitutes sufficient "cause" to justify a lifting of the stay. In re Kornhauser, 185 B.R. 425 (Bankr. S.D.N.Y. 1995). Similarly, "a Chapter

13 debtor's failure to make post-confirmation payments to mortgagee warranted lifting automatic stay." In Re Davis, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986). See also In Re Boca Development Associates, 21 B.R. 624 (Bankr. S.D.N.Y. 1982).

19.	In this matter, the Movant's interest in the Premises is not adequately protected as the Debtor has been in default on mortgage payments since February 2017 and has not made a payment in any of the previously filed Bankruptcy cases.

20.	Furthermore, the Debtor's Instant Case does not include a proposed Chapter 13 Plan, and thus the Debtor did not propose post-petition mortgage payments nor any other type of adequate protection payments to the Movant, nor had the Debtor proposed any maintenance payments with regard to the Property, such as the payment of real property taxes and insurance. See this Court's docket. The Debtor also did not file a Chapter 13 Plan in prior filings and thus has never proposed treatment of the mortgage debt.

21.	Accordingly, as the Debtor has not proposed a Chapter 13 Plan in a good faith attempt to reorganize, nor has the Debtor remitted any post-petition mortgage payments to the Movant, the Movant should be granted relief from the automatic stay as the Movant's interest in the Premises is not adequately protected.

**POINT III**

**THE MOVANT SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(2) AS THE DEBTOR DOES NOT HAVE ANY EQUITY IN THE PREMISES AND AS THE DEBTOR HAS FAILED TO DEMONSTRATE THAT THE PREMISES IS NECESSERY TO AN EFFECTIVE REORGANIZATION**

22.	Section 362(d)(1) of the Bankruptcy Code provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
…
    (2) with respect to a sat of an act against property under subsection (a) of this section, if –
        (A) the debtor does not have any equity in such property; and

6

> (B) such property is not necessary to an effective reorganization …. 11 U.S.C. §362(d)(2).

23. In the case at bar, the Debtor remains in default on the loan in the total debt amount of $591,609.52, as of August 16, 2025  See Ex. J.  Despite the significant sum owed to the Movant, the Premises has a value of only $625,000.00. See Ex. J.   If the Premises was to be sold, no surplus would result for the Debtor after all closing costs are paid.  There is no equity in the Premises.

24. The Debtor has not demonstrated that the Premises is necessary to an effective reorganization as the Debtor has not filed a Chapter 13 Plan in prior filings or in the instant case, nor has the Debtor ever filed all required documents in any Bankruptcy case. Thus, as Debtor has not fulfilled the filing obligations.  The fact that there is no equity in the Premises, the Premises is not necessary for reorganization, therefore , the stay should be vacated pursuant to 11 U.S.C. § 362(d)(2).

## POINT IV

### THE MOVANT SHOULD BE GRANTED *IN REM* RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4)(B) AS THE DEBTOR'S MULTIPLE BANKRUPTCY FILINGS ARE PART OF A SCHEME TO HINDER THE MOVANT'S EFFORTS TO COMPLETE A SALE OF THE PREMISES

25. In addition to granting relief from the automatic stay for cause, this Court is empowered to grant *in rem* relief pursuant to Section 362(d)(4)(B) of the Bankruptcy Code, which provides that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>    (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> …
>
>    (B) multiple bankruptcy filings affecting such real property. 11 U.S.C. §362(d)(4)(B).

26. The effect of *in rem* relief from the automatic stay results in the prohibition of any future filings by the Debtor or any other related entity from attaching to the Premises for a period of two years from the date of entry of such an order. In re Montalvo, 416 B.R. 381 (Bankr.E.D.N.Y. 2009). To demonstrate cause for granting said relief, the Movant "has the burden of establishing that the current filing is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay, and defraud." In re Lemma, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008), citing In re Abdul Muhaimin, 343 B.R. 159, 167, 168 (Bankr. D. Md. 2006). A bankruptcy court may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone." In re Procel, 167 B.R. 297 (Bankr. S.D.N.Y. 2012), quoting In re Blair, No. 09-76150, 2009 WL 5203738, at 4-5 (Bankr. E.D.N.Y. 2009).

27. Furthermore, this Court is also statutorily authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and, it is widely held that "the filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code. Serial filings are a **badge of bad faith**, as are petitions filed to forestall creditors." 11 U.S.C. §105(a) and In re Felberman, 196 B.R. 678 (Bankr. S.D.N.Y. 1995) (emphasis added, internal citations omitted). See also In re Casse, 219 B.R. 657 (Bankr.E.D.N.Y. 1998) (granting in rem relief from the automatic stay as the prior petitions by the debtor were filed solely to prevent the public auction sale of the debtor's real property, rather than to pursue any honest attempt to reorganize her debt).

28. The Bankruptcy Court for the Eastern District of New York was faced with a similar set of facts which today faces the Court, and in the matter of In re Prud'Homme Judge Holland held that:

> "The case is one of many filed in this and other bankruptcy courts by debtors who engage in multiple filings with no reasonable likelihood of success solely for the purpose of impeding the legitimate rights of a secured creditor. In the typical case schedules are not timely or indeed ever filed, the debtor does not participate in the proceeding, the debtor fulfills few if any of his or her statutory obligations, but invokes the automatic stay contained in § 362 nevertheless. In addition to the burden placed upon

8

> the secured creditor, the court is compelled to utilize its already overtaxed and limited resources to address and readdress a series of filings devoid of any legitimate purpose or prospect of success." In re Prud'Homme, 161 B.R. 747, 750 (Bankr.E.D.N.Y.1993).

29. In the Instant Case, a review of the procedural history reveals that the Debtor and the Co-Debtor are clearly wielding the Bankruptcy Code as a sword to frustrate and thwart the Movant from exercising its legitimate contractual and state law remedies.

30. Analyzing a creditor's potential entitlement to such relief, courts have looked to whether the debtor has filed or confirmed a plan of reorganization and made post-petition payments to the creditor, as well as the timing and sequencing of the filings. Id.

31. In the instant matter, the Debtor has failed to file a Chapter 13 Plan and full petition in addition to failing to make post-petition payments in any of the previous six (6) Bankruptcy Filings by the Debtor and Co-Debtor. Every one of the prior bankruptcy cases were dismissed due to the Debtor and Co-Debtor failing to file schedules and prosecute their petitions.

32. As a result, the Debtor and Co-Mortgagor's previous bankruptcy cases and the Instant Filing demonstrate a pattern of filings devoid of any legitimate purpose or prospect of success, commenced merely to hinder the Movant from obtaining possession of the Premises. The record of these filings is uncontroverted and evinces a lack of any good faith prosecution on the part of the Debtor. See In re Montalvo, 416 B.R. 381 (Bankr. E.D.N.Y. 2009).

33. The Debtor's pattern of behavior clearly demonstrates that the Debtor does not intend to reorganize his debt nor cure the arrears owed to the Movant, and instead seeks to simply stall the pending foreclosure sale and "buy more time" in possession of the Premises.

34. As such, the Court can "draw a permissible inference and find that the instant petition was part of a scheme of [the Debtor] to delay, hinder, and defraud". Id. See also In re GEL, LLC, 495 B.R. 240 (Bankr. E.D.N.Y. 2012) (holding that the filing of successive petitions by the debtor and related entities in two different judicial districts to prevent the mortgagee from foreclosing, while making no good faith effort

9

to prosecute the separate Chapter 11 cases, supported inference of scheme to delay, hinder, or defraud creditors, and warranted *in rem* stay relief).

35. It is respectfully contended that bad faith filings will continue by the Debtor and Co-Mortgagor unless and until the within requested relief is granted. Having suffered considerable delay and expense, the Movant seeks this honorable Court's protection under 11 U.S.C. § 362(d)(4)(B) so that the Movant may take any and all action necessary and proper to conduct it's foreclosure auction, and requests an *in rem* order negating the effects of any automatic stay in future proceedings commenced by the Debtor and/or any person having or claiming an interest in the Premises within two years of the date of the signed order.

36. Movant also requests relief from the co-debtor stay imposed by 11 U.S.C. § 1301(c) as it applies to the Co-Mortgagor to allow Movant to proceed with its Foreclosure Action and sale of the Premises without any further delays.

## POINT V

### THE CO-DEBTOR STAY SHOULD BE LIFTED PURSUANT TO 11 U.S.C. § 1301 (C)

37. If the Movant is to proceed with its foreclosure action against the Premises it must also have the automatic stay lifted as to Milton Davidson, the Co-Debtor.

38. The Co-Debtor has the benefit of a stay by virtue of the Debtor filing the within bankruptcy. The Co-Debtor should not continue to benefit from a stay of the withing proceeding once the stay is lifted hereafter.

39. The movant respectfully requests the Court to lift the co-debtor stay imposed by 11 U.S.C. § 1301(c).

## CONCLUSION

In light of the foregoing, the Movant respectfully requests that this honorable Court enter the proposed Order annexed hereto as **Exhibit P**.

No prior application has been made for this or like relief.

**WHEREFORE**, Nationstar Mortgage, LLC as servicer for U.S. Bank National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT respectfully requests an Order granting its motion in its entirety; and for such other relief as this court deem just and proper.

Dated:   November 11, 2025
           Tarrytown, NY

                                          **KNUCKLES & MANFRO LLP**
                                          Attorneys for Rushmore Servicing as servicer for
                                          U.S. Bank National Association, not in its
                                          individual capacity, but solely as Trustee for the
                                          RMAC Trust, Series 2016-CTT


                                         By:/s/<u>Mark R. Knuckles, Esq.</u>
                                             MARK R. KNUCKLES, ESQ.
                                             120 White Plains Road, Suite 215
                                             Tarrytown, NY 10591
                                             (914) 345-3020
                                             mrk@km-llp.com